## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARRELL PIERCE,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO.  21-548**

**BP AMERICA PRODUCTION
COMPANY, ET AL.,**
    **Defendants**

**SECTION: "E" (4)**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants, BP America Production Company ("BPAPC"), BP Exploration & Production Inc. ("BPX"), and BHP Billiton Petroleum (Deepwater) Inc. ("BHP"), (collectively, "Defendants").[1] Plaintiff Darrell Pierce ("Plaintiff") filed an opposition to Defendants' motion for summary judgment.[2]  Because Plaintiff's opposition was defective in some respects, the Court ordered Plaintiff to file a supplemental opposition,[3]  and Plaintiff did so.[4] Defendants filed a reply.[5]

## PROCEDURAL BACKGROUND

On March 17, 2021, Plaintiff filed his original complaint in this Court, seeking to recover for the personal injuries he sustained on March 19, 2018.[6] Plaintiff named as Defendants BPAPC and BHP.[7] In his original complaint, Plaintiff brought claims under the Longshore Harbor Worker's Compensation Act ("LHWCA"), the Jones Act, the general maritime law, and the Outer Continental Shelf Lands Act ("OCSLA").[8] Plaintiff

---

[1] R. Doc. 24.
[2] R. Doc. 31.
[3] R. Doc. 32.
[4] R. Doc. 33.
[5] R. Doc. 35.
[6] R. Doc. 1.
[7] *Id.*
[8] *Id.*

filed an amended complaint on June 15, 2021, adding BPX as a Defendant, adding negligence claims against BPAPC, and retaining his claims under the Jones Act, general maritime law, and Outer Continental Shelf Lands Act.[9] On December 15, 2021, the parties filed a Joint Stipulation, stipulating that the Atlantis does not qualify as a vessel; that Plaintiff did not qualify as a seaman under the Jones Act; that, because the Atlantis is a platform permanently affixed to the Outer Continental Shelf off the Coast of Louisiana, under the OCSLA, Louisiana law will apply as surrogate federal law to Plaintiff's claims; and the general maritime law and the Jones Act will not apply to Plaintiff's claims.[10]

## UNDISPUTED FACTS

The following facts are undisputed.[11] In August 2017, Plaintiff began his employment with Danos and Curole Marine Contractors, L.L.C. ("Danos") as a "Deepwater Operator" and was assigned to the BP Atlantis Oil and Gas Platform (the "Atlantis"), a semisubmersible platform permanently moored to the Outer Continental Shelf of the Gulf of Mexico at Green Canyon block 743, which is 150 miles south of New Orleans, Louisiana.[12] During the entirety of his employment with Danos, Plaintiff was assigned to the Atlantis.[13] The Atlantis is owned by BPX and BHP.[14] BPX is designated as the operator of the Atlantis and is charged with the responsibility of conducting all operations on behalf of BPX and BHP.[15] Danos is a contract labor services provider supplying temporary laborers to various corporate clients, including BP.[16]

In its capacity as operator of the Atlantic, BPX had contractual relationships with

---

[9] R. Doc. 13.
[10] R. Doc. 20.
[11] *See* R. Doc. 24-13; R. Doc. 33-2.
[12] R. Doc. 24-13 at ¶¶ 1, 3, 38; R. Doc. 33-1 at ¶¶ 1–2; R. Doc. 24-9 at pp. 1–3.
[13] R. Doc. 24-13 at ¶ 39; R. Doc. 33-2 at ¶ 39.
[14] R. Doc. 24-13 at ¶ 22; R. Doc. 33-2 at ¶ 22.
[15] R. Doc. 24-13 at ¶ 23; R. Doc. 33-2 at ¶ 23.
[16] R. Doc. 24-13 at ¶ 40; R. Doc. 33-2 at ¶ 40.

BHP, BPAPC, and Danos.[17] BPX contracted with Danos pursuant to a Master Service Contract for Operations and Maintenance Labor in the Gulf of Mexico, No. BPM-12-02560 ("MSC").[18] The MSC is "essentially a labor provision contract."[19] Article 7.03 of the MSC provides that BPX is to be considered the statutory employer of any Danos employee with respect to work performed off the coast of Louisiana.[20] The compensation schedule of the MSC provides that Danos will supply BPX "with personnel as required by each of the offshore platforms in the Gulf of Mexico for the potential positions as listed in Table A," and that Danos' "full compensation for complete performance of the Work and compliance with all the terms and conditions of this Contract shall be in accordance with the hourly rates per position and level specified in Table A, as well as additional terms, as applicable, included [herein]."[21] Clause 4.5 of the compensation schedule provides that Danos "may request approval from [BPX], on an annual basis, for individual employee's promotions from one position level to another as established" by the terms of the MSC.[22] The MSC further requires Danos to record and submit all hours expended in performance of the work on the Atlantis.[23]

BPX contracted with BPAPC pursuant to an Amended and Restated General Services and Agency Agreement, dated December 31, 2005 ("agency agreement").[24] Under the terms of the agency agreement, "BPX designated and appointed BPAPC as its 'agent and as general contractor' . . . in connection with any drilling and development work required by [BPX] in respect of operations offshore the Gulf of Mexico in which

---

[17] R. Doc. 24-13 at ¶ 8; R. Doc. 33-2 at ¶ 8.
[18] R. Doc. 24-13 at ¶ 9; R. Doc. 33-2 at ¶ 9.
[19] R. Doc. 24-13 at ¶ 10; R. Doc. 33-2 at ¶ 10.
[20] R. Doc. 24-13 at ¶ 10; R. Doc. 33-2 at ¶ 10.
[21] R. Doc. 24-3 at p. 9; R. Doc. 24-13 at ¶¶ 11–12; R. Doc. 33-2 ¶¶ 11–12.
[22] R. Doc 24-3 at p. 26; R. Doc. 24-13 at ¶ 13; R. Doc. 33-2 at ¶ 13.
[23] R. Doc. 24-13 at ¶ 14; R. Doc. 33-2 at ¶ 14.
[24] R. Doc. 24-13 at ¶ 15; R. Doc. 33-2 at ¶ 15.

[BPX] acts as operator."[25] Under the agency agreement, BPAPC agreed to provide BPX with "advice, support, work, goods, and services," and to perform same with its own personnel.[26] BPAPC "employed those workers assigned to the Operations Team, who supervised and worked with Danos employees such as [Plaintiff]."[27]

BPX contracted with BHP pursuant to the Green Canyon Block 743 Unit Operating Agreement ("UOA") entered on April 20, 2005.[28] The UOA adopts many of the terms set forth in a Joint Venture Operating Agreement ("JVOA") entered between BPX and BHP on March 15, 1995.[29] Under the UOA, BPX owns 56% of the Atlantis and BHP owns 44% of the Atlantis.[30] The UOA designates BPX as operator of the Atlantis, and in its capacity as operator, BPX is charged with conducting operations on behalf of BPX and BHP.[31] The agreements contain provisions for removal of the operator.[32] The JVOA and UOA provide that BHP and BPX have jointly purchased certain oil and gas leases on the Outer Continental Shelf and that BPX and BHP "desire to jointly explore, develop and operate" such leases.[33] The JVOA and UOA further provide that the "Operator pays the costs of the joint operations and each Participating Party shall reimburse the Operator for the Costs of each joint operation in proportion to its Participating Interest,"[34] and expenditures exceeding a certain cost cannot be made by the Operator without submission to the other party.[35] In addition to sharing costs, BHP and BPX share benefits, including the right to

[25] R. Doc. 24-13 at ¶ 16; R. Doc. 33-2 at ¶ 16.
[26] R. Doc. 24-13 at ¶ 17; R. Doc. 33-2 at ¶ 17. *See* R. Doc. 24-4 at pp. 1–2.
[27] R. Doc. 24-13 at ¶ 18; R. Doc. 33-2 at ¶ 18.
[28] R. Doc. 24-13 at ¶ 20; R. Doc. 33-2 at ¶ 20.
[29] R. Doc. 24-13 at ¶ 21; R. Doc. 33-2 at ¶ 21. *See* R. Docs. 24-16 at pp. 1–2 and 24-18.
[30] R. Doc. 24-13 at ¶ 22; R. Doc. 33-2 at ¶ 22. *See* R. Doc. 24-16 at p. 5.
[31] R. Doc. 24-13 at ¶ 23; R. Doc. 33-2 at ¶ 23. *See* R. Doc. 24-16 at p. 3.
[32] R. Doc. 24-13 at ¶ 28; R. Doc. 33-2 at ¶ 28. *See* R. Doc. 24-18 at pp. 24–25.
[33] R. Doc. 24-13 at ¶ 24; R. Doc. 33-2 at ¶ 24. *See* R. Docs. 24-16 at p. 1 and 24-18 at p. 9.
[34] R. Doc. 24-13 at ¶ 25; R. Doc. 33-2 at ¶ 25. *See* R. Doc. 24-18 at p. 33.
[35] R. Doc. 24-13 at ¶ 29; R. Doc. 33-2 at ¶ 29. *See* R. Doc. 24-18 at p. 34.

hydrocarbons, under the terms of the agreements.[36] The JVOA and UOA further provide that "[e]ach year the Operator shall develop a proposed Annual Operating Plan and submit the plan to the Non-Operating Parties."[37] The JVOA and UOA also contain provisions concerning voting procedures, under which the parties' voting interests are based on their respective working interests.[38]

On March 19, 2018, Plaintiff was working the nightshift and was walking in the carbon filter area of the Atlantis when he tripped over a ninety-degree pipe connecter and fell.[39]

## **DISPUTED FACTS**[40]

Plaintiff argues Defendants' motion for summary judgment should be denied because there are genuine issues of material fact.[41] First, Plaintiff argues the MSC between Danos and BPX creates a genuine issue of material fact regarding who controlled the Plaintiff because the MSC specifically states Danos shall control the performance of the details of the work.[42] Specifically, Plaintiff points to Article 7 of the MSC, which states as follows:

> In the performance of the Work, Contractor [Danos] is an independent contractor, shall control the performance of the details of the Work, and shall be responsible for the results as well as responsible for ensuring that the performance of the Work is conducted in a manner consistent with the appropriate safety, health, and environmental considerations including but

---

[36] R. Doc. 24-13 at ¶ 26; R. Doc. 33-2 at ¶ 26. *See* R. Doc. 24-18 at pp. 18 and 127–129.

[37] R. Doc. 24-14 at ¶ 30; R. Doc. 33-2 at ¶ 30. *See* R. Doc. 24-18 at p. 51.

[38] R. Doc. 24-14 at ¶ 31; R. Doc. 33-2 at ¶ 31. *See* R. Doc. 24-18 at pp. 59–64.

[39] R. Doc. 24-14 at ¶¶ 2, 92, 97; R. Doc. 33-2 at ¶¶ 2, 92, 97.

[40] Plaintiff's contention that genuine disputes of material fact exist (R. Doc. 33-1) is based on the allegations of his complaint, rather than on the evidence. This is not sufficient to carry the burden to show there is a genuine issue of fact for trial. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). ("Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden . . . [p]leadings are not summary judgment evidence.") (internal citations and quotations omitted); *see also Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994).

[41] R. Doc. 33 at p. 6.

[42] *Id.* at p. 5.

not limited to Company's policies thereon.[43]

Second, Plaintiff argues the fact that Danos paid Plaintiff's wages creates a genuine issue of material fact as to whether Plaintiff was a borrowed employee. Plaintiff argues these disputed facts are sufficient to prevent summary judgment in Defendants' favor.[44]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] "An issue is material if its resolution could affect the outcome of the action."[46] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[47] All reasonable inferences are drawn in favor of the non-moving party.[48] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[49]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

---

[43] R. Doc. 24-3 at p. 5.

[44] R. Doc. 33 at p. 6. Although Plaintiff contends there is a "genuine issue of material fact" regarding who paid Plaintiff's wages, in reality, there is no dispute of fact concerning the payment of Plaintiff's wages. The parties agree Plaintiff would submit his hours worked to Defendants for approval, and that, after approval by Defendants, Plaintiff's hours would be sent to Danos, that Danos paid Plaintiff's wages, and that Danos would then bill BP for Plaintiff's hours worked. R. Doc. 24-14 at ¶¶ 68–71; R. Doc. 33-2 at ¶¶ 68–71. The parties dispute whether, as a legal matter, this type of arrangement supports borrowed employee status. *See* R. Doc. 24-1 at p. 22; R. Doc. 33 at p. 6.

[45] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[46] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[48] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[49] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

fact."[50]  To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[51] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[52]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[53] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[54] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[55] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary

[50] *Celotex*, 477 U.S. at 323.
[51] *Id.* at 331.
[52] *Id.* at 322–24.
[53] *Id.* at 331–32 (Brennan, J., dissenting).
[54] *See id.* at 332.
[55] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[56]

## LAW AND ANALYSIS

In their motion for summary judgment, Defendants argue BPX, BPAPC, and BHP are entitled to immunity pursuant to the LHWCA against any tort claim asserted against them by Plaintiff.[57] Defendants argue Plaintiff's claims for employer and co-employee negligence are barred by the LHWCA as a matter of law.[58] Defendants argue the "undisputed facts establish that Plaintiff was BPX's borrowed employee."[59] Defendants also argue BPAPC was Plaintiff's borrowing employer and that BPAPC's employees, like Danos' employees, qualify as borrowed employees of BPX.[60] Defendants further argue BPAPC qualifies as Plaintiff's borrowing employer due to its status as agent of BPX.[61] Defendants argue BHP, as co-owner and joint venturer of BPX, is entitled to the same tort immunity as BPX.[62]

Plaintiff argues he was not the borrowed employee of BPX.[63] Plaintiff does not discuss whether he was a borrowed employee of BPAPC and BHP.[64] Plaintiff argues that, pursuant to the MSC between BPX and Danos, Danos did not relinquish control over

---

[56] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[57] R. Doc. 24-1 at p. 15.
[58] *Id.*
[59] *Id.* at pp. 15–25.
[60] *Id.* at pp. 15, 25–26.
[61] *Id.* at pp. 15, 25–26.
[62] *Id.* at pp. 15, 26–27.
[63] R. Doc. 33 at p. 4 *et seq.*
[64] *See id.*

Plaintiff.[65] Plaintiff further argues that because Danos paid his wages, Plaintiff was not a borrowed employee of Defendants.[66]

The borrowed employee doctrine evolved in the tort context but has since been applied to cases arising under the LHWCA.[67] "Worker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer."[68] This immunity from common law tort actions also applies in favor of borrowing employers.[69] Whether Plaintiff was a borrowed employee is a question of law,[70] and "if sufficient basic factual ingredients are undisputed, the court may grant summary judgment."[71]  The Fifth Circuit has set forth nine factors that are determinative of borrowed employee status:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
> (2) Whose work was being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?[72]

---

[65] *Id.* at p. 4.

[66] *Id.* at p. 6.

[67] *Total Marine Servs. v. Dir., Office of Worker's Compensation Programs, U.S. Dept. of Labor*, 87 F.3d 774, 777 (5th Cir. 1996).

[68] *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988) (citing 33 U.S.C. § 905(a).

[69] *Id.*

[70] *Delahoussaye v. Performance Energy Servs., L.L.C.*, 734 F.3d 389, 393 (5th Cir. 2013).

[71] *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

[72] *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

I.      Who had control?

The first factor examines who had control over Plaintiff and the work he was performing.[73] This factor requires a court to distinguish "between authoritative direction and control, and mere suggestion as to details . . . where the work furnished is part of a larger undertaking."[74] Plaintiff argues that, in this case, the MSC between Danos and BPX creates a genuine issue of material fact as to who exercised control over Plaintiff because the MSC specifically states Danos shall control the performance of the details of the Work. Specifically, Plaintiff points to Article 7 of the MSC, which states as follows:

> In the performance of the Work, Contractor [Danos] is an independent contractor, shall control the performance of the details of the Work, and shall be responsible for the results as well as responsible for ensuring that the performance of the Work is conducted in a manner consistent with the appropriate safety, health, and environmental considerations including but not limited to Company's policies thereon.[75]

In *Crawford v. BP Corporation North America Inc.*, another case involving the intersection between the borrowed employee doctrine and the tort immunity under the LHWCA, this Court was presented with a Master Service Agreement, entered between Danos and BPAPC, containing a contractual provision identical to the one quoted above.[76] There, the Court explained that

> The MSA purports to prohibit Matthew's borrowed employee status. "Obviously parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." (*Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1245 (5th Cir.1988)). The MSA provides that Danos will control all aspects of the work performed on the MARLIN. The reality at the worksite, however, was the exact opposite: BP America controlled and supervised Matthew's work in all material respects. The Court finds that the parties' actions in carrying out the MSA impliedly modified or waived the provision

---

[73] *Id.*
[74] *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 313 (5th Cir. 1969) (quoting *Standard Oil Co. v. Anderson,* 212 U.S. 215, 222 (1909)).
[75] R. Doc. 24-3 at p. 5.
[76] *Crawford v. BP Corp. N. Am. Inc.,* No. CIV.A. 13-445, 2015 WL 1190123 (E.D. La. Mar. 16, 2015).

regarding control. (See *Brown* [*v. Union Oil Co. of Cal.,* 984 F.2d 674, 678 (5th Cir.1993) (per curiam)] ("The parties' actions in carrying out the contract can impliedly modify or waive the express provision.")). The parties had a tacit understanding that BP America would exercise control over Matthew.[77]

The same reasoning applies in this case: the contractual provision in the MSC between Danos and BPX cannot prevent Plaintiff from acquiring borrowed employee status as a matter of fact.

In *Melancon v. Amoco Production Co.*, the Fifth Circuit affirmed the district court's finding, that the control factor weighed in favor of borrowed-employee status.[78] The Fifth Circuit concluded that Amoco, the alleged borrowing employer, "clearly had control" over the plaintiff because the plaintiff "took orders" from Amoco personnel, Amoco personnel "told him what work to do, and when and where to do it."[79] The Fifth Circuit further explained that the nominal, lending employer in *Melancon* "gave no instructions" to the plaintiff other than to report "to the Amoco field and perform the work requested by Amoco personnel."[80]

The situation in this case is factually similar to that in *Melancon*. In this case, the undisputed facts show that BPAPC and BPX controlled Plaintiff's work. In support of their contention that BPAPC and BPX controlled Plaintiff's work, Defendants cite Plaintiff's deposition and the affidavit of Mark King, a Sales Manager at Danos and Plaintiff's supervisor while Plaintiff was employed with Danos.[81] In his affidavit, King attests as follows:

> Once Danos assigns an employee to work for a customer and the customer has approved the employee, the customer has operational control over the

---

[77] *Id.* at *3.
[78] *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988).
[79] *Id.* at 1245.
[80] *Id.*
[81] R. Doc. 24-10.

employee from the time the employee is dispatched to until he returns from the customer's work site.

Danos employees are instructed to report to work at their assigned location, receive daily work assignments from Danos' customer, and work under the sole direction and supervision of the customer's supervisory personnel.

On March 19, 2018, Pierce was employed by Danos as a production operator assigned to the Atlantis, a semi-submersible platform, moored on the Outer Continental Shelf in the Gulf of Mexico, off the coast of Louisiana.

While working on the Atlantis, Pierce was directly supervised by BP personnel.

Danos exercised no control over Pierce while he was working on the Atlantis.

There were no Danos supervisors or employees on the Atlantis who directed or supervised Pierce's work.

Pierce received his specific work instructions while on the Atlantis from BP's production team lead/production supervisor and other BP employees.

When Pierce arrived on the Atlantis, he received his work assignments from a BP personnel and/or computer situated aboard the Atlantis.

The listing of work assignments Pierce received from the BP computer aboard the Atlantis were prepared by the Planning Scheduler, the Offshore Installation Manager ("OIM"), and the Maintenance Supervisor - all of whom were BP employees.

I did not exercise any control over how Pierce was to perform his work aboard the Atlantis.

I did not provide Pierce with any daily work assignments while he was working on the Atlantis.[82]

Plaintiff does not dispute any of these facts;[83] however, Plaintiff, relying on the allegations

of his complaint and the terms of the MSC between Danos and BPX, argues that the

control factor is not met in this case.[84]

---

[82] R. Doc. 24-10 at ¶¶ 8–9, 11, 13–14, 18–21, 23–24.
[83] *See* R. Doc. 24-13 at ¶¶ 42-43, 47, 50–51, 54; R. Doc. 33-2 at ¶¶ 42-43, 47, 50–51, 54.
[84] R. Doc. 33 at pp. 5–6; *see generally* R. Doc. 33-1.

In the course of his employment on the Atlantis, Plaintiff worked as a Production Operations Technician on the Production team, and he received his daily work assignments from a supervisor employed by BPAPC.[85] Plaintiff's immediate supervisor on the Atlantis was BPAPC employee Billy Sam Locke, who was the Production Supervisor/Team Lead of the Production Team to which Plaintiff was assigned.[86] As Production Team Lead, Locke provided the Production Team, including Plaintiff, with daily assignments and instructions.[87] Plaintiff participated in daily meetings, daily toolbox talks, and routine safety meeting alongside BPAPC personnel on the Production Team, and the daily meetings, toolbox talks, and safety meetings were all run by BP personnel.[88] Plaintiff's daily activities were performed pursuant to BP's permitting system.[89]

The summary of the record is clear that BPX and BPAPC exercised authoritative control over Plaintiff's work on the Atlantis. No reasonable juror could find otherwise. The first factor weighs in favor of borrowed employee status.

II.   <u>Whose work was being performed?</u>

The second factor examines whose work was being performed.[90] In his affidavit, King attests that "[a]ll the work Pierce performed on the Atlantis was BP's work."[91] In his affidavit, Locke attests that "[a]ll work performed by the Danos Production Operations Technicians was bp's work for the Atlantis."[92] Furthermore, in his deposition, Plaintiff testified that he considered the work he was assigned to be "essentially BP's work for the

---

[85] R. Doc. 24-9 at p. 5.
[86] R. Doc. 24-13 at ¶ 50; R. Doc. 33-2 at ¶ 50.
[87] R. Doc. 24-11 at ¶ 10.
[88] *Id.* at ¶¶ 11–12, 16.
[89] *Id.* at ¶¶ 13–16.
[90] *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir. 1993).
[91] R. Doc. 24-10 at ¶ 22.
[92] R. Doc. 24-11 at ¶ 17.

platform."[93] Moreover, Plaintiff admits that "[a]ll worked performed by [him] as a Danos Production Operations Technician was bp's work for the Atlantis."[94] Accordingly, the second factor weighs in favor of borrowed employee status.

III.  Was there an agreement or understanding between Danos and BP America?

The third factor examines whether there was an agreement, understanding, or meeting of the minds between the original and the borrowing employer.[95] Plaintiff and other Danos employees worked aboard the Atlantis pursuant to an MSC entered between BPX and Danos.[96] The MSC contained Article 7, quoted above, which purports to prohibit Plaintiff from acquiring borrowed employee status.[97] "The reality at the worksite and the parties' actions in carrying out a contract, however, can impliedly modify, alter, or waive express contract provisions."[98] In this case, it is clear BPX and Danos had a meeting of the minds that Plaintiff would take his direction from the Defendants. Danos clearly understood—and even intended—that Plaintiff would be taking his instructions from Defendants, notwithstanding Article 7 of the MSC.[99] It is undisputed that Danos "is a contract labor services provider that supplies temporary laborers to various corporate clients," that Danos "assigns its payroll employees to work at different industrial and commercial business for the purpose of performing Danos customer's work," and that "BP has been a customer of Danos for many years and regularly requests the temporary

---

[93] R. Doc. 24-2 at p. 33.
[94] R. Doc. 24-13 at ¶ 63; R. Doc. 33-2 at ¶ 63.
[95] *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir. 1993).
[96] *See* R. Doc. 24-3.
[97] *Id.* at p. 5.
[98] *Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1245 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.,* 841 F.2d 572 (5th Cir. 1988) (citing *McDonough Marine Service, Inc. v. M/V ROYAL STREET,* 465 F.Supp. 928, 935 (E.D.La.1979), *aff'd* 608 F.2d 203 (5th Cir.1979); *Stauffer Chemical Co. v. W.D. Brunson,* 380 F.2d 174, 182 (5th Cir.1967)).
[99] R. Doc. 24-3 at p. 5.

services of Danos laborers."[100] The record supports a finding that Danos—a temporary labor services provider which has provided laborers to BP for many years—had a tacit understanding with Defendants that Defendants would exercise control over Plaintiff. Plaintiff has offered no summary judgment evidence to raise a genuine dispute of material fact concerning whether there was an agreement between the original and the borrowing employer. Therefore, the third factor weighs in favor of borrowed employee status.

IV.   Did Plaintiff acquiesce?

The fourth factor examines whether the employee acquiesced in the new work situation.[101] "The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them."[102] The Fifth Circuit has found that "one month is a sufficient amount of time for [the employee] to appreciate the new work conditions" and acquiesce to them.[103] It is undisputed Plaintiff worked on the Atlantis for a year and a half, encompassing the entirety of his employment with Danos.[104] This factor favors borrowed employee status.

V.   Did Danos terminate its relationship with Plaintiff?

The fifth factor examines whether the original employer terminated its relationship with the employee.[105] This factor does not require the lending employer to completely sever its relationship with the borrowed employee.[106] Instead, the focus is "on the lending employer's relationship with the employee while the borrowing occurs."[107] As set forth above, the undisputed evidence demonstrates that Danos exercised little to no

---

[100] R. Doc. 24-13 at ¶¶ 40–41, 44; R. Doc. 33-2 at ¶¶ 40–41, 44.
[101] *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir. 1993).
[102] *Brown v. Union Oil Co. of California*, 984 F.2d at 678 (5th Cir. 1993).
[103] *Brown*, 984 F.2d at 674, 678.
[104] R. Doc. 24-13 at ¶ 39; R. Doc. 33-2 at ¶ 39. *See also* R. Doc. 24-10 at ¶ 30.
[105] *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir. 1993).
[106] *Capps v. N.L. Baroid-NL Indus., Inc.,* 784 F.2d 615, 617 (5th Cir. 1986).
[107] *Id.* at 618.

control over Plaintiff while he worked on the Atlantis, and that Danos placed no restrictions on Defendants with respect to Plaintiff's employment.[108]   Therefore, this factor weighs in favor of borrowed employee status.[109]

VI.   Who furnished the tools and place for performance?

The sixth factor examines who furnished the tools and the place for performance of the employee's work.[110] As to the place for performance of the work, it is undisputed all of Plaintiff's work during the course of his employment by Danos was performed on the Atlantis.[111] The UOA entered between BPX and BHP provides that BPX owns 56% of the Atlantis, and BHP owns 44% of the Atlantis.[112] Defendants provided the place for performance of Plaintiff's work by virtue of their ownership of the Atlantis.

In their statement of uncontested fact, at paragraph 67, Defendants state it is an undisputed fact that "BP provided all tools" for performance of Plaintiff's work on the Atlantis.[113] In support of their contention that it is undisputed that "BP provided all tools" for performance of Plaintiff's work, Defendants cite to the declaration of Mark King, who attests that "BP provided the tools" for the performance of Plaintiff's work on the Atlantis.[114] In his response to Defendants' statement of uncontested fact, Plaintiff, at paragraph 67, states as follows:

> Deny, as it is uncertain whether BP provided all tools . . . for the performance of Pierce's work on the Atlantis. The statement from the declaration of Mark King states that BP provided *the* tools . . . [for] Pierce's work on the Atlantis; however, [Mark King's declaration] does not state *all* tools were provided.[115]

---

[108] R. Doc. 24-13 at ¶¶ 42–43, 45–54; R. Doc. 33-2 at ¶¶ 42–43, 45–54.
[109] *See id.* (finding fifth factor weighed in favor of borrowed employee status in substantially similar circumstances).
[110] *Billizon*, 993 F.2d at 105.
[111] R. Doc. 24-14 at ¶¶ 38–39; R. Doc. 33-2 at ¶¶ 38–39.
[112] R. Doc. 24-16 at p. 5.
[113] R. Doc. 24-13 at ¶ 67.
[114] R. Doc. 24-10 at ¶ 28.
[115] R. Doc. 33-2 at ¶ 67.

"The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material."[116] The question of who provided the tools for the performance of Plaintiff's work presents a material fact because it is one of the nine factors that are determinative of the legal question of borrowed employee status.[117] "A dispute of material fact is 'genuine' if the evidence would allow a reasonable jury to find in favor of the non-movant.[118] In this case, the dispute regarding who provided the tools for performance of Plaintiff's work is not a genuine dispute of fact because a reasonable jury could not find for Plaintiff on this issue. The undisputed evidence shows that Defendants provided the tools for the performance of Plaintiff's work. Plaintiff testified during his deposition that BP, and not Danos, provided the tools he used to perform his job on a daily basis.[119] In his affidavit, King attests that "Danos had no equipment on the Atlantis," and that "[w]hen working on the Atlantis, Pierce utilized only BP equipment."[120] Plaintiff admits Danos had no equipment on the Atlatnis and that Danos did not provide him with any tools for his work.[121] King further attests that "Danos did not provide Pierce with any tools for his work on the Atlantis" and "BP provided the tools and the place for the performance for Pierce's work on the Atlantis."[122] This factor favors borrowed employee status.

---

[116] *Callan v. Deutsche Bank Tr. Co. Americas*, 11 F. Supp. 3d 761, 766–67 (S.D. Tex. 2014), *amended*, 93 F. Supp. 3d 725 (S.D. Tex. 2015).

[117] *See Delahoussaye v. Performance Energy Servs., L.L.C.,* 734 F.3d 389, 393 (5th Cir. 2013) (holding that whether Plaintiff was a borrowed employee is a question of law.); *see also Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

[118] *Callan*, 11 F. Supp. 3d at 766 (S.D. Tex. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

[119] R. Doc. 24-2 at pp. 33–34.

[120] R. Doc. 24-10 at ¶¶ 25–26.

[121] R. Doc. 24-13 at ¶ 66.

[122] *Id.* at ¶¶ 27-28.

VII.   Was Plaintiff's "employment" with the new employer over a considerable length of time?

The seventh factor examines whether the employee's new employment was over a considerable length of time.[123] It is undisputed Plaintiff worked on the Atlantis for a year and a half, which encompassed the entirety of his offshore employment with Danos.[124] This factor clearly favors borrowed employee status.

VIII.   Who had the right to discharge Plaintiff?

The eighth factor examines who had the right to discharge the employee.[125] The Fifth Circuit has instructed that the proper focus when considering who has the right to discharge the employee is on whether the borrowing employer had the right to terminate the employee's services with itself.[126] It is undisputed that, if BP was not satisfied with his job performance on the Atlantis, BP, specifically Billy Sam Locke, could have Plaintiff removed from the Atlantis platform.[127] In addition, in his deposition, Plaintiff testified that if he was to be terminated from his work on the Atlantis, it would be "someone at BP" who would make that decision because he "work[ed] for them."[128] Plaintiff offered no summary judgment evidence showing BP did not have the right to terminate Plaintiff's services on the Atlantis.

This factor clearly weighs in favor of borrowed employee status.

IX.   Who had the obligation to pay Plaintiff?

The ninth factor examines who, as between the borrowing employer and lending employer, had the obligation to pay the employee.[129] The following facts are undisputed:

---

[123] *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir. 1993).
[124] R. Doc. 24-13 at ¶ 39; R. Doc. 33-2 at ¶ 39. *See* R. Doc. 24-10 at ¶ 30.
[125] *Billizon*, 993 F.2d at 105.
[126] *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986).
[127] R. Doc. 24-13 at ¶ 72; R. Doc. 33-2 at ¶ 72.
[128] R. Doc. 24-2 at pp. 17–18.
[129] *Billizon*, 993 F.2d at 105.

Each day, Pierce, as a Danos Production Operations Technician, would submit his hours worked via an electronic portal.

Pierce's hours worked were then submitted to a bp Production Supervisor/Team Lead for review and approval.

After approval by bp, Pierce's hours worked were then sent to Danos.

Danos would then bill bp for Pierce's hours worked.[130]

Plaintiff argues that, because Danos paid his wages, Plaintiff was not a borrowed employee of any Defendant.[131] The Fifth Circuit, however, has held this type of pay arrangement supports borrowed employee status.[132] Thus, the Court concludes the ninth factor weighs in favor of borrowed employee status.

Each of the nine *Ruiz* factors supports the conclusion that Plaintiff was the borrowed employee of BPX and BPAPC.[133] The Court thus finds as a matter of law that Plaintiff was the borrowed employee of BPX and BPAPC.

The Court now turns to the issue of BHP's status as Plaintiff's borrowing employer and whether BHP is entitled to the shield from tort immunity provided under the LHWCA. In *Davidson v. Enstar Corporation*, the Fifth Circuit concluded that "joint venturers . . . were entitled to the shield from tort liability if they employed workers covered by the LHWCA."[134] The Fifth Circuit in *Davidson* listed the following four factors as relevant to determining whether the parties to an endeavor are joint venturers: "(1)

---

[130] R. Doc. 24-13 at ¶¶ 68–71; R. Doc. 33-2 at ¶¶ 68–71.

[131] R. Doc. 33 at p. 6.

[132] *See Brown*, 984 F.2d at 678 (finding ninth factor weighed in favor of borrowed employee status where borrowed employee was paid by nominal employer based on time sheets verified daily by the borrowing employer).

[133] With respect to BHP, BHP was a non-operating joint venturer with BPX, and, as a result, BHP had little to no involvement in the day-to-day operations on the Atlantis. *See* R. Doc. 24-18 at p. 17, 23; *see also* R. Doc. 24-16 at p. 5.According, the nine *Ruiz* factors do not support the conclusion that BHP was Plaintiff's borrowing employer. However, for the reasons set forth below, BHP is entitled to invoke the immunity accorded to an employer under the LHWCA as a defense to Plaintiff's tort claims on the basis of BHP's status as a joint venturer with BPX, Plaintiff's borrowing employer.

[134] 848 F.2d 574, 577 (5th Cir.), *on reh'g*, 860 F.2d 167 (5th Cir. 1988).

whether the parties intended to form a partnership or joint venture; (2) whether the parties share a common interest in the subject matter of the venture; (3) whether the parties share profits and losses from the venture; and (4) whether the parties have joint control or the joint right of control over the venture."[135]

In *Parker v. McDermott, Inc.*, defendant Elf Aquitane Operating, Inc. filed a motion for summary judgment, alleging that plaintiff's exclusive remedy against it was for benefits provided under the LHWCA and defendant Energy Development Corporation filed a motion for summary judgment, arguing that as a joint venturer with Elf Aquitane Operating in owning Platform 199–A, it was also the plaintiff's employer and was, therefore, entitled to the same immunity from liability as Elf Aquitane Operating.[136] The court, after concluding that defendant Elf Aquitane Operating's motion for summary judgment should be granted because it was the plaintiff's employer and the LHWCA provided the plaintiff's sole remedy against it, addressed the question of whether Energy Development formed a joint venture with Elf Aquitane Operating.[137] The court examined the October 15, 1987 Offshore Operating Agreement to which Energy Development and Elf Aquitane Operating were parties.[138] Under the agreement, Elf Aquitane Operating was designated as the operator, Energy Development was a non-operating party, and the agreement provided for conditions under which the operator could be removed.[139] The court also pointed out that the parties shared "a common interest in the subject matter of the venture," and shared "profits and losses."[140] With respect to the two offshore leases governed by the parties' agreement, Elf Aquitane Operating owned a 75% interest, Energy

---

[135] *Id.*
[136] No. CIV. A. 89-4269, 1990 WL 223011, at *1 (E.D. La. Dec. 18, 1990).
[137] *Id.* at *3–*4.
[138] *Id.*
[139] *Id.* at *4.
[140] *Id.*

Development owned a 15.9725% interest, and two other parties owned the remaining interest.[141] The agreement contained voting provisions.[142] The court also explained that "offshore operating agreements with unequal shares and rights of control" constitute joint ventures.[143] The court concluded that the agreement in that case satisfied all four factors for determining whether parties to an endeavor formed a joint venture and that, because Energy Development was a joint venturer with Elf Aquitane Operating, Energy Development was immune from liability under the LHWCA.[144]

In this case, the relationship and agreements between BPX and BHP are factually similar to the relationship and agreement in *Parker v. McDermott, Inc*. In this case, BPX and BHP's agreements demonstrate their intent to form a joint venture by expressing their "desire to jointly explore, develop and operate" the jointly purchased oil and gas leases.[145] This satisfies the first *Davidson* factor. Further, the agreement designates BPX as the operator, and contains provisions for removal of the operator. The parties may elect to participate in certain operations, and the operator is reimbursed for expenditures it incurs during operations by the parties according to their participating interests. Expenditures exceeding a certain amount cannot be made without prior approval from non-operating parties. The participating parties share not only the costs, but also the benefits, of the operations. Thus, because the parties share a common interest in the subject matter of the venture, and they share profits and losses, the second and third *Davidson* factors are satisfied. Finally, the fourth *Davidson* factor is met because the parties have joint right of control over the venture by virtue of the following: the parties'

---

[141] *Id.*
[142] *Id.*
[143] *Id.* at *5.
[144] *Id.*
[145] R. Doc. 24-13 at ¶ 24; R. Doc. 33-2 at ¶ 24. *See* R. Docs. 24-8 at p. 9 and 24-16 at p. 1.

right to choose to participate in particular operations; the obligations owed by the operator to the non-operating party; the expenditure limits placed upon the operator; the provisions for removal of the operator; and the voting rights of each party. Therefore, the Court concludes BHP and BPX formed a joint venture, and because BHP is a joint venturer with BPX in respect to the operations on the Atlantis platform, BHP also immune from liability for Plaintiff's tort claims under the LHWCA.

## CONCLUSION

**IT IS ORDERED** that the motion for summary judgment[146] filed by Defendants, BP America Production Company, BP Exploration & Production Inc., and BHP Billiton Petroleum (Deepwater) Inc., is **GRANTED.** Judgment is entered in favor of Defendants, BP America Production Company, BP Exploration & Production Inc., and BHP Billiton Petroleum (Deepwater) Inc. and against Plaintiff, Darrell Pierce, on all claims.

**New Orleans, Louisiana, this 8th day of June, 2022.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[146] R. Doc. 24.